UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————

№ 06-CV-5965 (JFB) (ETB)

———————

IMR Associates, Inc. d/b/a Valli Associates,

Plaintiff,

versus

C.E. Cabinets, Ltd. and MAAX, Inc.,

Defendants.

———————

MEMORANDUM AND ORDER
May 11, 2007

———————

Joseph F. Bianco, District Judge:

Plaintiff commenced this action in the Supreme Court of the State of New York, Suffolk County on September 28, 2006. Defendants removed the action to this Court on November 5, 2006. Defendants now move to dismiss the action as against MAAX, Inc., for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), or in the alternative, for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), and move to dismiss plaintiff's third, fourth and fifth causes of action against C.E. Cabinets, Ltd. for failure to state a claim. For the reasons set forth below, defendants' motion is granted in part and denied in part.

I. Background

The following facts are either uncontested at this juncture or are derived from plaintiff's pleadings and affidavits in opposition to defendants' motion to dismiss, and accepted as true for purposes of this motion. *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 56 (2d Cir. 1985); *see also DiFolco v. MSNBC Cable L.L.C.*, No. 06-CV-4728 (LAP), 2007 U.S. Dist. LEXIS 23440, at *7 (S.D.N.Y. March 30, 2007).

A. The Facts

MAAX Canada, the successor to MAAX, Inc. (hereinafter referred to as "MAAX"), the defendant named in this action, is a Canadian corporation with its principal place of business in Montreal, Quebec. (Aubin Aff. ¶

3.) MAAX manufactures and sells bathroom accessories such as acrylic bathtubs and showers to customers in New York and internationally. (*Id.*) However, MAAX does not own or maintain any offices or property in New York. (Aubin Aff. ¶ 5.) MAAX maintains one bank account in New York with the New York branch of the National Bank of Canada, which is used exclusively to accept payments from MAAX's United States customers. (*Id.*) MAAX also maintains six other bank accounts in Canada with National Bank of Canada and the Royal Bank of Canada. (*Id.*) Funds in the New York account are automatically transferred to MAAX's primary account in Canada with the National Bank of Canada. (*Id.*) MAAX does not have any employees that work in New York. (*Id.*)

In January 1996, Valli Associates ("Valli") entered in an agreement (the "Agreement") with defendant C.E. Cabinets, Ltd. ("CE") which provided that Valli would be the exclusive sales representative for CE in connection with "kitchen cabinets and vanity" manufactured by CE for the territory of New York State, among others. (Compl. ¶ 7; Valli Aff. ¶ 5.) Valli is a New York Corporation with its principal place of business in Hauppauge, New York. (Compl. ¶ 1.) Under the Agreement, Valli was to receive a commission "deemed earned by Agent upon acceptance or delivery of the order by Principal, whichever occurs first." (Valli Aff. ¶ 6; Compl. Ex. A.) The Agreement contains a New York choice-of-law clause which provides that:

> The term of this agency shall be one (1) year from the date thereof, renewable from year to year. This agreement shall continue in full force and effect until the date ("Termination Date") set forth in a notice given by one party to the other indicating such parties election to terminate this Agreement, which termination date shall be at least ninety (90) days after the date notice of such election is given. Alternatively, this Agreement may be terminated at any time by mutual written Agreement between both parties.

(Compl. Ex. A.)

In February 1999, MAAX purchased all of the shares of CE. (Aubin Aff. ¶ 7.) After MAAX purchased all of the shares of CE, in February 1999, the Agreement was amended so that in order for defendant to terminate the Agreement, Valli was required to be given one year's written notice provided Valli's annual sales exceeded seven million dollars. (Vall Aff. ¶ 11; Compl. Ex. A.)

B. The Present Action

According to the complaint, the 1996 Agreement was renewed each year and remains binding between Valli and all defendants.[1] (Compl. ¶ 11.) Plaintiff brought

---

[1] Defendants deny that the terms of the 1996 Agreement are binding upon MAAX and deny that the Agreement was renewed as to CE. (Raymond Aff. ¶ 4.) Defendants assert that, to the extent any such agreement is in effect, the agreement is between Valli and MAAX Cabinets Inc., described *infra*, not Valli and MAAX. (Raymond Reply Aff. ¶ 8.) Defendants point to the termination letter to support their position, which announces that MAAX Cabinets Inc., also doing business as CE, is discontinuing the manufacture of cabinetry products and that "to the extent any agreement may exist between MAAX and Valli with respect to the sale and marketing of MAAX products, such agreement is hereby terminated." (Raymond Reply Aff. Ex. A.)

this action as a result of the defendants alleged non-compliance with the Agreement. It is plaintiff's position that MAAX assumed the Agreement between Valli and CE. According to plaintiff, in September 2006, MAAX then attempted to terminate the Agreement effective immediately. (Valli Aff. ¶ 12.) According to Valli, this termination was not in compliance with the Agreement and, thus, the Agreement remains in full force.[2] (Valli Aff. ¶ 12.)

II. DISCUSSION

A. Rule 12(b)(2) Motion

Defendants argue that this Court lacks jurisdiction over defendant MAAX and move for dismissal of MAAX under Fed. R. Civ. P. 12(b)(2). On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that the court has jurisdiction over the defendant. *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996). However, prior to discovery, the plaintiff "need only make a *prima facie* showing of jurisdiction through its own affidavits and supporting materials to defeat the motion." *Welinsky v. Resort of the World D.N.V.*, 839 F.2d 928, 930 (2d Cir. 1988) (quoting *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981)). Furthermore, in considering a Rule 12(b)(2) motion, the pleadings and affidavits are to be construed in the light most favorable to plaintiff, the non-moving party, and all doubts are to be resolved in plaintiff's favor.[3] *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 85 (2d Cir. 2001).

This case is before this Court pursuant to diversity jurisdiction. Accordingly, the Court must determine whether New York law permits the Court to exercise personal jurisdiction over defendant MAAX. *See Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 124 (2d Cir. 2002). The Court must therefore consider (1) whether New York law would confer jurisdiction by New York courts over defendant MAAX and (2) whether the exercise of jurisdiction over defendant MAAX comports with the Due Process Clause of the Fourteenth Amendment. *Id*.

Under New York law, there are two bases for personal jurisdiction over out-of-state defendants: (1) general jurisdiction pursuant to N.Y.C.P.L.R. § 301, and (2) long-arm jurisdiction pursuant to N.Y.C.P.L.R. § 302. The Court finds that plaintiff has established a *prima facie* case of jurisdiction over MAAX under § 302.[4]

---

[2] Valli alleges that at the time defendant purportedly terminated the Agreement, Valli's annual sales exceeded seven million dollars. (Valli Aff. ¶ 11.)

[3] The Court notes that "[e]ventually personal jurisdiction must be established by a preponderance of the evidence . . . at an evidentiary hearing or at trial." *A.I. Trade Finance, Inc. v. Petra Bank*, 989 F.2d 76, 79 (2d Cir. 1993).

[4] Under § 301, "[p]ersonal jurisdiction over a parent company by virtue of a subsidiary is proper if the subsidiary is 'doing business' in New York and either (i) the subsidiary does all the business that its parent could do were it in New York by its own officials, making the subsidiary an agent of the parent, or (ii) the parent controls the operations of the subsidiary to such a degree that the subsidiary is in fact a mere department of the parent." *Bear Stearns & Co. v. Ralph Wilson Indus., Inc.*, No. 91-CV-2223 (LMM), 1991 WL

3

"Under the New York long arm statute, a court may exercise personal jurisdiction over a foreign corporation to the maximum extent permitted by the Fourteenth Amendment Due Process Clause." *In re Terrorist Attacks on Sept. 11, 2001*, 440 F. Supp. 2d 281, 284 (S.D.N.Y. 2006) (citing *Mario Valente Collezioni, Ltd. v. Confezioni Semeraro Paolo, S.R.L.*, 264 F.3d 32, 36-38 (2d Cir. 2001)). To establish personal jurisdiction under N.Y.C.P.L.R. § 302(a)(1), "two requirements must be met: (1) the defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity." *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006) (citing *McGowan v. Smith*, 419 N.E.2d 321, 323 (N.Y. 1981)). The statute allows jurisdiction "only over a defendant who has 'purposefully availed himself of the privilege of conducting activities within New York and thereby invok[ed] the benefits and protections of its laws.'" *Fort Knox Music Inc. v. Baptiste*, 203 F.3d 193, 196 (2d Cir. 2000) (quoting *Parke-Bernet Galleries v. Franklyn*, 256 N.E.2d 506, 508-09 (N.Y. 1970)).

Several factors should be considered in determining whether an out-of-state defendant transacts business in New York, including:

> (i) whether the defendant has an on-going contractual relationship with a New York corporation; (ii) whether the contract was negotiated or executed in New York and whether, after executing a contract with a New York business, the defendant has visited New York for the purpose of meeting with parties to the contract regarding the relationship; (iii) what the choice-of-law clause is in any such contract; and (iv) whether the contract requires [defendant] to send notices and payments into the forum state or subjects them to supervision by the corporation in the forum state.

*Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 22 (2d Cir. 2004) (quoting *Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 29 (2d Cir. 1996)). None of these factors is dispositive. "[T]he ultimate determination is based on the totality of circumstances." *Id*.

With respect to the Due Process Clause, there are two components to a determination of whether personal jurisdiction exists – the "minimum contacts" inquiry and the "reasonableness" inquiry. *Metro. Life Ins. Co.*, 84 F.3d at 567. "Ordinarily, 'if jurisdiction is proper under the CPLR, due process will be satisfied because CPLR § 302 does not reach as far as the constitution permits.'" *Anderson v. Canarail, Inc.*, No. 05-CV-3828 (HB), 2005 U.S. Dist. LEXIS 22544, *8-9 (S.D.N.Y. Oct. 6, 2005) (quoting *Topps Co., Inc. v. Gerrit J. Verburg Co.*, 961 F. Supp. 88, 90 (S.D.N.Y. 1997)).

Here, Valli alleges that MAAX assumed CE's obligations under the Agreement after 2001 and that pursuant to its terms, the Agreement never terminated and remains in effect. Though defendants dispute the continuation of the Agreement, plaintiff's allegation, reiterated in the Valli affidavit, is that the Agreement was automatically renewed each year. Thus, to the extent defendants rely on their argument that the

---

211203, at *4 (S.D.N.Y. Oct. 9, 1991). Because the Court finds that Valli has established jurisdiction under § 302, the Court declines to address Valli's argument that the Court has jurisdiction pursuant to § 301.

Agreement terminated in support of their position that there is no personal jurisdiction over MAAX, this factual dispute regarding renewal cannot be resolved by this Rule 12 motion and the jurisdictional argument by MAAX on that ground must fail at this juncture.

According to defendants, in February 2005, MAAX Cabinets Inc. ("MCI"), a Canadian Corporation, existing under the laws of the Province of Quebec, became the successor to CE. (Raymond Aff. ¶ 3.) MCI was in the business of manufacturing and selling wooden cabinetry products to customers internationally, including customers in New York and other states in the United States. (*Id.*) Defendants further state that MCI began operating all aspects of CE and used the name CE for certain lines of cabinets due to recognition of the brand name in the market (hereinafter references to CE or MCI will be to "CE," "MCI," or "CE/MCI"). (*Id.*) Thus, defendants argue that the Agreement was exclusively between CE/MCI and Valli, and that MAAX was not a party to the Agreement, and dispute the factual information upon which plaintiff's claim is based. However, plaintiff points to evidence, which if true, would support a conclusion that MAAX assumed the Agreement with Valli.

First, Valli asserts that MAAX's Vice President of Marketing and Sales, Donald Raymond ("Raymond"), sent to Valli, via facsimile, an "Announcement of price increase – US" for "any new orders for all MAAX product lines . . . placed with MAAX Cabinets", which, according to Valli, was in violation of the Agreement. (Valli Aff. ¶ 14; Pl. Ex. C.)

Second, Valli also states in his affirmation that Raymond, throughout performance under the Agreement, worked with Valli on a continuous basis, during which time he represented that he worked for MAAX as its Vice President of Sales and Marketing. (Valli Aff. ¶¶ 18, 23.)

Third, Valli points to a March 18, 2004 letter from MAAX to Valli which refers Valli to its obligations under the Agreement, thereby enforcing its terms. (Valli Aff. ¶ 20; Pl. Ex. D.) Valli also asserts that letters he received starting in 2001 always contained the MAAX logo and merely contained the words "Cabinetry Sector" underneath. (Valli Aff. ¶ 22; Pl. Ex. C.)

Fourth, Valli asserts that, during the performance of the agreement, occasionally Valli would receive letters from MAAX that listed the name MAAX Cabinets, Inc. at the bottom of the letter in small writing. Valli argues that MCI never assumed the agreement, but rather was given certain responsibilities in connection with the Agreement by MAAX. (Valli Aff. ¶ 24.) Though Valli concedes that MCI provided product relative to orders and covered payroll, Valli points to commission statements that were sent to Valli in New York which Valli alleges were from MAAX, not MCI. (Valli Aff. ¶ 24; Pl. Ex. I.)

Fifth, Valli also asserts that from 1999 until 2006, each proposal Valli made in connection with the Agreement had to be cleared by MAAX and that pricing was always determined by MAAX throughout performance of the Agreement. (Valli Aff. ¶ 26.) Furthermore, according to Valli, all credit applications that were received from potential cabinetry customers were sent to MAAX for approval before an order would be honored and no order could be filled without MAAX's approval. (*Id.* ¶ 27.)

Sixth, Valli asserts that he spoke to Andre Heroux ("Heroux"), president of MAAX, throughout performance of the Agreement at least once every two months regarding all aspects of cabinetry sales in New York relative to the Agreement. (Valli Aff. ¶ 29.) In addition, according to Valli, representatives from MAAX spoke to plaintiff by phone on almost a daily basis and visited New York from Canada approximately every month-and-a-half from 1999 to 2006. (Valli Aff. ¶ 30.)

Finally, in February 1999, plaintiff notes that it received a letter from CE regarding the impending purchase of all of CE's shares by MAAX which stated:

> MAAX Inc. has come to an agreement to acquire all of C.E. Cabinets shares by the first of March, 1999.
> * * *
> The transaction will enable MAAX to establish a solid presence in an entirely new market.
> * * *
> This also means that today is business as usual at C.E. and all territory and commission agreements between C.E. and its Manufacturing Reps will remain in force.

(Pl. Ex. F (emphasis omitted).)

Defendants deny that an assignment of the Agreement to MAAX ever occurred. (Turgeon Reply Aff. ¶ 4; Raymond Aff. ¶ 5.) In fact, defendants dispute each of plaintiff's assertions with evidence that defendants contend support their position that MAAX did not assume the Agreement. Specifically, defendants assert that MCI/CE made its own decisions regarding its dealings with Valli and that Valli conducted all of its communications with respect to its representation of CE/MCI with representatives of MCI/CE. (Raymond Reply Aff. ¶ 6.) Raymond disputes Valli's assertion that Raymond represented he worked for MAAX, stating that at all times, he was an employee of MCI, not MAAX Inc. or MAAX Canada and that he never represented himself as being an employee of MAAX. (*Id.*) As to Heroux, to whom Valli asserts he spoke at lease once every two months, defendants state that Heroux was in fact Director and President of MCI from May 4, 2005 until the end of MCI's relationship with Valli. (Turgeon Reply Aff. ¶ 19.) Defendants also state that MCI did not require approval by MAAX for credit applications for product purchases and that no such approval was ever obtained. (Raymond Reply Aff. ¶ 19.) Defendants also highlight the termination letter, which they assert is from MCI, not MAAX. (Raymond Aff. ¶ 9; Raymond Reply Aff. ¶ 8 and Ex. A.) Most significantly, defendants state that plaintiff is incorrect in its belief that the use of the MAAX logo on letterhead is an indication that correspondence is from MAAX[5] (Raymond Reply Aff. ¶ 12; Turgeon Reply Aff. ¶¶ 9-11.) Defendants assert that each correspondence received by Valli, including the price increase announcement dated July 21, 2006, and the commission statement (Pl.'s Ex. I), were from MCI and that "MCI used the 'MAAX' logo and other trademarks under license with and with the authorization of MAAX Inc. and MAAX Inc.'s successor MAAX Canada." (Raymond Reply Aff. ¶ 13.)

As stated above, in this pre-discovery stage of proceedings, plaintiff need only make a *prima facie* showing as to jurisdiction.

---

[5] In support of this argument, defendants attached a copy of the letterhead that defendants assert is used by MAAX (Turgeon Reply Aff., Ex. A.)

6

Viewing the evidence in a light most favorable to plaintiff, the Court finds that plaintiff has established a *prima facie* case of jurisdiction under § 302(a)(1). Plaintiff alleges that MAAX assumed the contract with Valli which contains a New York choice of law provision, and points to evidence that it asserts demonstrates such an ongoing contractual relationship, including letters allegedly from MAAX regarding the terms of the contract and updates on pricing. *See Linzer v. EMI Blackwood Music, Inc.*, No. 94-CV-1318 (RWS), 1998 U.S. Dist. LEXIS 17020 (RWS) (S.D.N.Y. Nov. 13, 1995) (denying motion to dismiss for lack of jurisdiction on a "successor-in-interest theory" where defendant "not only . . . inherited interests, but also . . . [took] continued actions to promote those interests and to receive profit from them"). Plaintiff also alleges that employees of MAAX visited New York on a regular business and spoke to plaintiff by telephone in New York on a frequent basis. Though defendants dispute each of these facts, for purposes of the instant motion, the Court must view the evidence in a light most favorable to plaintiff. Plaintiff's affidavits point to evidence, that, if true, would support the existence of personal jurisdiction over MAAX. Therefore, the Court declines to dismiss the complaint at this juncture. Valli is entitled to discovery to further explore the issues set forth in this lawsuit. [6]

Having found that plaintiff established a *prima facie* case of jurisdiction against MAAX, the court finds that the exercise of long-arm jurisdiction, at this stage, comports with due process because, if the Agreement was assigned to MAAX, then MAAX has availed itself of the privilege of conducting

---

[6] In the event that MAAX is found not to have assumed the Agreement, plaintiff argues that MAAX is still subject to personal jurisdiction on a theory of successor liability. "[I]n some circumstances a corporation may be held liable for breach of another corporation's contracts on a theory of successor liability." *Int'l Private Satellite Partners, L.P. v. Lucky Cat*, 975 F. Supp. 483, 486 (S.D.N.Y. 1997) (denying motion to dismiss where plaintiff sufficiently alleged successor was bound by a forum selection clause based on a *de facto* merger). Though a plaintiff must actually plead allegations of successor liability in the complaint, *Network Enters. v. APBA Offshore Prods.*, No. 01-CV-11765 (CSH), 2002 U.S. Dist. LEXIS 17256 (S.D.N.Y. Sept. 10, 2002), "[p]leadings of successor liability are subject to the lenient . . . requirements of Rule 8(a)." *Old Republic Ins. Co. v. Hansa World Cargo Serv.*, 170 F.R.D. 361, 376 (S.D.N.Y. 1997). "Under New York law, successor liability will lie when: '(1) there is an express or implied agreement to assume the other company's debts and obligations; (2) the transaction was fraudulent; (3) there was a de facto merger or consolidation of the companies; or (4) the purchasing company was a mere continuation of the selling company.'" *Kidz Cloz, Inc. v. Officially for Kids, Inc.*, No. 00-CV-6270 (DC), 2002 U.S. Dist. LEXIS 13058, at *13-14 (S.D.N.Y. July 17, 2002) (quoting *Am. Buying Ins. Serv. v. S. Kornreich & Sons*, 944 F. Supp. 240, 249 (S.D.N.Y. 1996) (citations omitted)). Courts have denied motions to dismiss on the basis of the pleadings alone, where it was possible that a non-party to the contract containing the forum selection clause was the successor entity to the party to the contract. *See Int'l Private Satellite Partners, L.P. v. Lucky Cat*, 975 F. Supp. 483, 486 (W.D.N.Y. 1997). Valli's complaint alleges that MAAX acquired all shares of CE and that CE's activities in connection with the Agreement were at the discretion and under the control of MAAX (Compl. ¶¶ 14-15.) However, because plaintiff has alleged a *prima facie* case of personal jurisdiction based on an alleged assumption of the Agreement, the Court need not address the successor liability issue at this time.

business in New York sufficient to grand jurisdiction under § 302(a)(1) and the due process clause.

Accordingly, defendants' motion to dismiss for lack of personal jurisdiction is denied at this juncture. Defendants may again raise the issue of personal jurisdiction upon a motion for summary judgment, after plaintiff has had an opportunity to engage in discovery. *Manhattan Life Ins. Co. v. A.J. Stratton Syndicate (No. 782)*, 731 F. Supp. 587, 593 (S.D.N.Y. 1990) ("While a court should not approve a fishing expedition when little more exists than plaintiff's bare assertions that jurisdiction is proper, under New York law plaintiffs are entitled to discovery regarding the issue of personal jurisdiction if they have made a sufficient start, and shown their position not to be frivolous.") (internal quotation marks omitted). Because the issue of personal jurisdiction is significantly intertwined with substantive contract issues in this case, the Court does not limit discovery to the issue of personal jurisdiction.

## B. Rule 12(b)(6) Motion

Defendants also seek to dismiss plaintiff's first and second causes of action against MAAX for breach of contract, plaintiff's third cause of action against MAAX and MCI for breach of the covenant of good faith and fair dealing, fourth cause of action against MAAX for tortious interference with a contract, fourth cause of action for tortious interference with a contract against MCI, and plaintiff's fifth cause of action for punitive damages against MCI and MAAX  In reviewing a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted, the court must accept the factual allegations set forth in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enterp.*, 448 F.3d 518, 521 (2d Cir. 2006); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). Dismissal is warranted only if "'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004) (internal quotations omitted). The appropriate inquiry is "not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." *Twombly v. Bell Atl. Corp.*, 425 F.3d 99, 106 (2d Cir. 2005).

### 1. Breach of Contract

Defendants rely on their assertion that MAAX did not assume the contract with Valli for their arguments as to why the claims relating to the breach of contract and tortious interference with the contract should be dismissed as against MAAX  Defendants point to their own affidavits and exhibits submitted in connection with the Rule 12(b)(2) motion. However, for purposes of a motion to dismiss, everything in the plaintiff's complaint must be taken as true.[7] Accordingly, defendants' motion to dismiss the breach of contract claims must be denied.

### 2. Tortious Interference with Contract

Defendants also move to dismiss plaintiff's fourth cause of action for tortious

---

[7] "The presentation of affidavits on a motion under Rule 12(b)(1) . . . does not convert the motion into a motion for summary judgment under Rule 56." *Alliance for Envtl. Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 89 (2d Cir. 2006) (citing *Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1010-11 (2d Cir. 1986)).

8

interference with contract. "Tortious interference with contract requires the existence of a valid contract between the plaintiff and a third party, defendant's knowledge of that contract, defendant's intentional procurement of the third-party's breach of the contract without justification, actual breach of the contract, and damages resulting therefrom." *Lama Holding Co. v. Smith Barney Inc.*, 668 N.E.2d 1370, 1375 (N.Y. 1996). Plaintiff's complaint alleges:

> That at all relevant times, defendants were aware of the terms of the Agreement and said breaches above described were cause by defendants, as part of a prior scheme or plan with each other, to wrongfully interfere with the Agreement and deprive Plaintiff of past and future commissions due to the plaintiff, and to interfere with plaintiff's performance of the Agreement with respect to its continuing relationship with customers, all to the financial benefit of all defendants.

(Compl. ¶ 30.) Plaintiff fails to properly plead a cause of action for tortious interference with contract against either defendant. Plaintiff alleges that both CE and MAAX were, at some point, parties to the contract. To state a valid claim for tortious interference with a contract, plaintiff must allege a contract between defendant and a third party. Plaintiff fails to allege the existence of the third party. However, because this claim may be pled in the alternative, Valli is granted leave to replead to clarify that this claim is being pled as such. Accordingly, this claim is dismissed without prejudice.

### 3. Breach of the Covenant of Good Faith

Plaintiff's third cause of action for breach of the covenant of good faith and fair dealing is dismissed as duplicative of plaintiff's cause of action for a breach of contract.[8] *Nanjing Textiles Imp/Exp Corp. v. NCC Sportswear Corp.*, No. 06-CV-52 (JGK), 2006 U.S. Dist. LEXIS 56111, at *36 (S.D.N.Y. Aug. 11, 2006); *Apfel v. Prudential-Bache Sec., Inc.*, 183 A.D.2d 439 (N.Y. App. Div. 1992) 583 N.Y.S.2d 386, 387 (N.Y. App. Div. 1992) ("The cause of action alleging a breach of good faith is duplicative of a cause of action alleging breach of contract, since every contract contains an implied covenant of good faith and fair dealing."); *Casalino Interior Demolition Corp. v. Custom Design Data, Inc.*, 653 N.Y.S.2d 35, 36 (N.Y. App. Div. 1995) ("The appellant is entitled to dismissal of the plaintiff's second cause of action, alleging a breach by the appellant of the implied covenant of good faith. Such a breach is merely an element of the damages for the breach of contract alleged in the plaintiff's first cause of action.").

### 4. Punitive Damages

Plaintiff's fifth cause of action for punitive damages is also dismissed.[9] There is no *independent* cause of action for punitive damages in New York. *Mayes v. UVI Holdings, Inc.*, 723 N.Y.S.2d 151, 157 (N.Y. App. Div. 2001); *Steinberg v. Monasch*, 448

---

[8] Plaintiff's moving papers did not oppose defendants' motion to dismiss the breach of the covenant of good faith and fair dealing claim.

[9] Plaintiff's moving papers did not oppose defendants' motion to dismiss plaintiff's fifth cause of action for punitive damages. However, at oral argument counsel for plaintiff indicated an intent to seek punitive damages.

N.Y.S.2d 200, 202 (N.Y. App. Div. 1982). Furthermore, "[p]unitive damages are not recoverable for an ordinary breach of contract as their purpose is not to remedy private wrongs but to vindicate public rights." *Rocanova v. Equitable Life Assur. Soc'y*, 634 N.E.2d 940, 943 (N.Y. 1994); *see also United States ex rel. Evergreen Pipeline Constr. Co. v. Merritt Meridian Constr. Corp.*, 95 F.3d 153, 160 (2d Cir. 1996) ("Generally, punitive damages are not available for a breach of contract."). "Thus, a private party seeking to recover punitive damages must not only demonstrate egregious tortious conduct by which he or she was aggrieved, but also that such conduct was part of a pattern of similar conduct directed at the public generally." *Id*. at 161. Because plaintiff's claim of tortious interference was dismissed, plaintiff's complaint does not allege such conduct. *Americu Credit Union v. Cumis Ins. Soc'y*, No. 06-CV-1348 (NPM), 2007 U.S. Dist. LEXIS 25523, at *6 (N.D.N.Y. Apr. 5, 2007) ("The New York Court of Appeals has held that in the absence of an underlying tort duty, a defendant is not liable to pay punitive damages for a breach of contract claim.") (citing *New York Univ. v. Continental Ins. Co.*, 662 N.E.2d 763 (N.Y. 1995)). Accordingly, because there is no independent tort, Valli's independent claim for punitive damages is dismissed.[10]

### III. CONCLUSION

For the foregoing reasons, defendants' motion to dismiss for lack of personal jurisdiction is denied. Defendants' motion to dismiss plaintiff's fourth cause of action for tortious interference with contract is granted without prejudice. Defendants' motion to dismiss plaintiff's third cause of action for breach of the covenant of good faith and fifth cause of action for punitive damages as a separate claim is granted with prejudice. If plaintiff seeks to file an amended complaint, plaintiff must do so within thirty days of the date of this Order.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: May 11, 2007
Central Islip, New York

\* \* \*

The attorney for plaintiff is Charles G. Eichinger, Esq., Charles G. Eichinger & Associates, P.C., One Suffolk Square, Suite 510, 1601 Veterans Memorial Highway, Islandia, New York 11759. The attorney for defendants is Christopher Patrick McCabe, Esq., Quinn McCabe LLP, 274 Madison Avenue, Suite 705, New York, New York 10016.

---

[10] If plaintiff amends the complaint to re-allege a tortious interference with contract claim, the Court will permit plaintiff to continue to seek punitive damages, not as an independent claim, but rather as a form of relief for the tort claim.